IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal Nos. 04-309-3 |
| | ) |
| MAURICE WATKINS | ) |

O P I N I O N

DIAMOND, D.J.

Presently before the court is a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. §2255 filed by Maurice Watkins ("petitioner").[1] Because petitioner knowingly and voluntarily agreed to a valid and enforceable waiver of his right to file a §2255 motion attacking his conviction or sentence, his motion will be denied.[2]

On December 7, 2004, a grand jury returned a one-count indictment charging petitioner, along with two other individuals, with conspiracy to distribute and to possess with intent to

---

[1] Petitioner also has filed a motion to proceed *in forma pauperis*. Because there is no filing fee for a §2255 motion, petitioner's motion to proceed *in forma pauperis* will be denied as moot.

[2] Pursuant to Rule 8(a) of the Rules Governing §2255 Proceedings, the court finds that no evidentiary hearing on petitioner's motion is required. Where the record conclusively shows that a movant is not entitled to relief, the court may dismiss the motion based on the record without a hearing. See United States v. Nahodil, 36 F.3d. 323, 326 (3d Cir. 1994). Thus, if the record, supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted in support of a §2255 motion, or if the movant would not be entitled to relief as a matter of law even if the factual predicates as alleged in the motion are true, an evidentiary hearing is not required. See Government of Virgin Islands v. Nicholas, 759 F.2d 1073, 1075 (3d Cir. 1985). In this case, for the reasons set forth in this opinion, the record affirmatively establishes as a matter of law that petitioner's claims for relief have been waived.

distribute one kilogram or more of heroin in violation of 21 U.S.C. §846. On March 27, 2006, pursuant to a written plea agreement negotiated by petitioner's court-appointed attorney Robert E. Stewart, Esq.,[3] petitioner entered a plea of guilty to that charge. Pursuant to the terms of the plea agreement, petitioner waived his right to take a direct appeal from his conviction or sentence, subject to several enumerated exceptions, and further waived his right to file a §2255 motion or any other collateral proceeding attacking his conviction or sentence. A presentence report was ordered and a sentencing date was set.

After receipt of the presentence report this court issued a memorandum order and tentative findings and rulings which, *inter alia*, found petitioner to be a career offender pursuant to U.S.S.G. §4B1.1(a). This finding increased petitioner's total offense level from 29 to 34, which, along with a criminal history category of VI,[4] resulted in an advisory guideline range of 262-327 months.

At the sentencing hearing, petitioner, now represented by Attorney Patrick J. Thomassey, alleged that Attorney Stewart had lied to him to induce him to accept the plea bargain and asked

---

[3] Attorney Stewart was petitioner's second court-appointed attorney. At earlier stages of the proceedings he had been represented by Assistant Federal Public Defender Jay J. Finkelstein, whom the court had permitted to withdraw as petitioner's counsel upon petitioner's request.

[4] Because he had 17 criminal history points, petitioner's criminal history category was VI notwithstanding his designation as a career offender.

AO 72
(Rev. 8/82)

that he be permitted to withdraw his guilty plea.[5] The court, finding that petitioner's guilty plea was knowingly and voluntarily made, denied petitioner's request and sentenced him to a term of imprisonment of 262 months, the low end of the advisory guideline range.

After petitioner filed a notice of appeal in the Court of Appeals for the Third Circuit, Attorney Thomassey filed a brief and motion to withdraw representation pursuant to Anders v. California, 386 U.S. 738 (1967). Concluding that petitioner had "no nonfrivolous issues for appeal," the appellate court granted counsel's Anders motion and affirmed petitioner's conviction and sentence.

Petitioner timely filed the pending motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. §2255,[6] in which he asserts three grounds for relief: (1) that his "pre-trial" counsel (Attorney Stewart) was ineffective in failing to

---

[5] Attorney Stewart had filed a motion to withdraw as petitioner's counsel about 2 months after the change of plea hearing citing a conflict with another client that counsel was representing. The court granted the motion and appointed Attorney Thomassey to represent petitioner at sentencing.

[6] Pursuant to 28 U.S.C. §2255, a federal prisoner may move the sentencing court to vacate, set aside or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. §2255(a). Relief under §2255 is "generally available only in 'exceptional circumstances' to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." United States v. Gordon, 979 F.Supp. 337, 339 (E.D.Pa. 1997) (citing Hill v. United States, 368 U.S. 424, 428 (1962)).

investigate the case, failing to inform him that he might be classified as a career offender, and falsely advising him that he could challenge drug quantity at sentencing; (2) that sentencing counsel (Attorney Thomassey) was ineffective in failing to argue for the withdrawal of petitioner's guilty plea; and, (3) that he should receive the retroactive benefit of an amendment to the United States Sentencing Guidelines relating to the counting of multiple sentences, which he concedes was not in effect at the time of sentencing.

The government has filed a response asking this court to enforce the provision of the parties' plea agreement by which petitioner waived his right to file a §2255 motion or any other collateral proceeding attacking his conviction and sentence. Upon due consideration of petitioner's motion, the government's response and petitioner's reply, the court finds that petitioner knowingly and voluntarily waived his right to seek relief under §2255 and that his waiver is valid and enforceable.

Petitioner in this case entered into a negotiated plea agreement with the United States Attorney for the Western District of Pennsylvania which contained a provision expressly waiving his collateral attack rights. This waiver provision provides:

> "[Petitioner] further waives the right to file a motion to vacate sentence, under 28 U.S.C. §2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence."

Plea Agreement, ¶A3.

The Court of Appeals for the Third Circuit has recognized that a defendant's waiver of his right to file a §2255 motion or other collateral proceeding attacking his conviction and sentence is enforceable "provided that [it is] entered into knowingly and voluntarily and [its] enforcement does not work a miscarriage of justice." United States v. Mabry, 536 F.3d 231, 237 (3d Cir. 2008). Applying this standard, the court finds that petitioner's waiver of his collateral attack rights in this case is valid and enforceable.

First, the record establishes that petitioner's waiver of his collateral attack rights was knowing and voluntary. Because there is no allegation here that petitioner actually was misled into waiving his collateral attack rights, the court may determine whether the waiver was knowing and voluntary merely by looking to the written plea agreement itself as well as the change of plea colloquy. Mabry, 536 F.3d at 238.

Here, petitioner's collateral attack waiver, clearly set forth in the written plea agreement, is very broad and, unlike his direct appeal waiver, which explicitly preserved his right to take a direct appeal under certain enumerated circumstances, contains <u>no</u> exceptions, explicitly stating that petitioner "<u>waives the right to file a motion to vacate sentence, under 28 U.S.C. §2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence.</u>" Plea Agreement, ¶A3. (emphasis added).

AO 72
(Rev. 8/82)

Moreover, a review of the plea colloquy establishes that petitioner plainly understood the waiver. Whether a defendant knowingly and voluntarily enters into a plea agreement containing a waiver turns on whether "the district court inform[ed] the defendant of, and determine[d] that the defendant underst[ood] the terms of any plea agreement provisions waiving the right ... to collaterally attack the sentence as Federal Rule Criminal Procedure 11(b)(1)(N) requires." Mabry, 536 F.3d at 239.

Here, despite the fact that this court did not strictly adhere to Federal Rule of Criminal Procedure 11(b)(1)(N), which requires the court, not the government or defense counsel, to address the defendant in a plea hearing and inform him that he is waiving his right to appeal and to collaterally attack his sentence, the court nevertheless is satisfied that petitioner adequately understood the terms of the plea agreement waiving his collateral attack rights.

At the plea hearing, defendant acknowledged his signature on the plea letter, confirmed that he had read it and had discussed it with his attorney and affirmed under oath that he had signed it voluntarily. Plea Transcript at 14. The government then summarized the plea agreement and reviewed all of the agreement's terms, including the collateral attack waiver provision, specifically noting that "Mr. Watkins waives his right to file a motion pursuant to 28 U.S.C. Section 2255." Id. at 15. When the court asked petitioner whether he had any questions regarding the plea agreement, he stated under oath that he did not. Id. at 16.

Thus, despite the court's failure strictly to adhere to Fed. R. Crim. P. 11(b)(1)(N), petitioner cannot show that the court's error affected his substantial rights or precluded him from understanding the waiver. Instead, the record shows that petitioner understood that by pleading guilty he was giving up his right to file a §2255 motion or any other collateral motion attacking his conviction or sentence, and that he gave up that right knowingly and voluntarily. See, United States v. Goodson, 544 F.3d 529, 539 (3d Cir. 2008) (deficient plea colloquy did not preclude defendant from understanding that he had waived his appellate rights, and holding that the defendant's substantial rights were not affected).

Moreover, to the extent petitioner otherwise contends that his plea was not knowing or voluntary based on his allegations that his counsel failed to inform him of his potential career offender status or misinformed him as to his ability to challenge drug quantity at sentencing, these issues were presented in his appellate counsel's Anders brief on direct appeal and were found to lack merit by the Third Circuit Court of Appeals, which found that petitioner "understood the consequences of his plea and that he entered his plea knowingly and voluntarily." United States v. Watkins, 297 Fed. Appx. 170, 174 (3d. Cir. 2009).

Having determined that petitioner's waiver was knowing and voluntary, the court next must consider whether enforcement of that waiver, even if knowing and voluntary, would work a miscarriage of justice. Mabry, 536 F.3d at 237. "[A] court has

AO 72
(Rev. 8/82)

an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice based on the record evidence before it." Id. at 237-38. This court is to use a common sense approach and "look to the underlying facts to determine whether a miscarriage of justice would be worked by enforcing the waiver." Mabry, 536 F.3d at 243.

Utilizing this approach, this court is satisfied that the enforcement of petitioner's knowing and voluntary waiver in this case would not work a miscarriage of justice. First, as in Mabry, enforcement of the collateral attack waiver here would not bar petitioner from pursuing relief on any grounds expressly preserved in the plea agreement, as the collateral attack waiver agreed to by petitioner was broad and contained no exceptions. Plea Agreement, ¶A3 (emphasis added).

Nor can it be argued that petitioner's counsel was ineffective or coercive in negotiating the plea agreement that contained the collateral attack waiver provision, see e.g. United States v. Wilson, 429 F.3d 455 (3d Cir. 2005)(stating that enforcing a waiver in connection with a coerced plea would work a miscarriage of justice), as any such contention is foreclosed by the finding of the Third Circuit Court of Appeals on direct review that petitioner's guilty plea in this case was knowing and voluntary. Watkins, 297 Fed. Appx. at 174.

Finally, petitioner has not identified "any nonfrivolous ground, not covered by the waiver, for a direct appeal or

collateral attack." Mabry, 536 F.2d at 243. Rather, the three grounds for relief petitioner seeks to raise in his pending motion clearly are encompassed by the broad waiver of his collateral attack rights and otherwise are not substantial. See Mabry, 536 F.3d at 243.

Petitioner's first asserted ground for relief is that his "pre-trial" counsel, Attorney Stewart, was ineffective in failing to properly investigate the case, failing to move to suppress wiretap evidence, failing to inform him that he might be classified as a career offender, and falsely advising him that he could challenge drug quantity at sentencing. None of these allegations have merit.

In order to establish constitutionally ineffective assistance of counsel, a petitioner must demonstrate: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that the deficient performance actually prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). In the context of a guilty plea, the prejudice prong of the Strickland test can be met by a showing that, but for counsel's errors, petitioner would have proceeded to trial instead of pleading guilty. Hill v. Lockhart, 474 U.S. 52, 56-59 (1985); United States v. Nahodil, 36 F.3d 323, 326 (3d Cir. 1994).

In this case, petitioner would be unable to show either deficient performance on the part of Attorney Stewart or prejudice. Although he summarily alleges that Attorney Stewart "failed to move to suppress the wiretap," he does not indicate

AO 72
(Rev. 8/82)

upon what sort of arguable ground any such suppression motion legitimately may have been based, and he offers nothing in support of his contention that his counsel failed to investigate his case other than his unsupported statement that his counsel failed to inform him of alleged statements made by a co-defendant that "took [petitioner] out of the conspiracy."

Moreover, petitioner's current allegations are belied by his own admissions at his change of plea hearing. At that hearing, the Assistant United States Attorney presented a factual basis in support of petitioner's plea that outlined in significant detail petitioner's participation in the conspiracy and the evidence in support thereof, which included not only abundant wiretap evidence but also information from a confidential informant, from petitioner's co-defendant, and from a witness in another criminal investigation. Plea Transcript at 16-20. When asked if the information presented by the government was accurate as it pertained to him, petitioner, under oath, admitted that, other than the weight alleged by the government, the information otherwise was accurate. Plea Transcript at 20-21.

Petitioner's knowing and voluntary guilty plea likewise forecloses any claim of prejudice arising from any alleged ineffectiveness on the part of Attorney Stewart in failing to inform petitioner that he might be classified as a career offender or falsely advising him that he could challenge drug quantity at sentencing. It is clear from the plea colloquy that petitioner displayed a complete understanding of the actual sentencing

ramifications of his guilty plea during the plea colloquy, and any arguable ineffectiveness on the part of petitioner's counsel in advising him as to the potential sentencing consequences of his guilty plea would be insufficient to negate the voluntary and knowing nature of petitioner's plea.[7] United States v. Irvin, 429 Fed. Appx. 182, 188 (3d Cir. 2011).

Petitioner's claim of ineffectiveness against his sentencing counsel, Attorney Thomassey, likewise has no merit. Although petitioner contends that Attorney Thomassey was ineffective in failing to "argue for the withdrawal of petitioner's guilty plea," the record is clear that the court in fact did consider, and reject, at the sentencing hearing petitioner's request to withdraw his guilty plea, Sentencing Transcript at 17-32, and the appellate court held on direct appeal in this case that petitioner understood the consequences of his plea, and that he entered it knowingly and voluntarily, and concluded that the issue of whether petitioner's guilty plea was valid "lacks merit." Watkins, 297 Fed. Appx. at 174.

Finally, there is no merit to petitioner's third asserted ground for habeas relief, that he should receive the retroactive benefit of Amendment 709 to the United States Sentencing Guidelines, which petitioner concedes did not become effective

---

[7] The court also notes that the Third Circuit Court of Appeals already has ruled in this case that this court properly calculated petitioner's criminal history and sentence on the basis of his career criminal status and that the amount of heroin attributed to petitioner would not have changed the sentencing calculations. Watkins, 297 Fed. Appx. At 173.

AO 72
(Rev. 8/82)

until November 1, 2007, well over a year after petitioner's sentencing hearing.

Petitioner cites no authority suggesting that this amendment may be applied retroactively to individuals sentenced prior to its effective date, but, even assuming it could be, the amendment nonetheless would have no impact on the calculation of petitioner's criminal history score and would not reduce his criminal history category or his guidelines sentencing range.

Amendment 709 addressed, *inter alia*, the counting of multiple prior sentences under U.S.S.G. 4A1.2. Specifically, it was designed to simplify the rules for counting multiple sentences and promote consistency in the application of the guidelines by eliminating the use of the term "related cases" and substituting the terms "single" and "separate" sentences. Under the amendment, where a defendant has multiple prior sentences, the court must first determine whether those sentences should be counted separately or as a single sentence. U.S.S.G. §4A1.2(a)(2). Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (<u>i.e.</u>, the defendant is arrested for the first offense prior to committing the second offense). Where there is no intervening arrest, prior sentences are counted separately <u>unless</u>: (A) the sentences resulted from offenses contained in the same charging instrument; or, (B) the sentences were imposed on the same day. Any prior sentence covered by (A) or (B) is to be treated as a single sentence. <u>Id</u>.

AO 72
(Rev. 8/82)

In this case, under the then-applicable version of the sentencing guidelines, petitioner properly received three criminal history points for a prior sentence for his conviction of possession with intent to deliver crack cocaine (PSIR ¶28) and three criminal history points for a prior sentence for his conviction of carrying a firearm without a license (PSIR ¶29).[8] Petitioner appears to suggest in his third §2255 claim that under Amendment 709 he would not have received points for both of these sentences because he had pled guilty, and was sentenced for both convictions, on the same day - March 7, 1994. Petitioner is incorrect.

Even if Amendment 709 had been in effect, these two prior sentences still would have been counted as separate sentences, and petitioner would have received criminal history points for both, because the two offenses were separated by an intervening arrest. The presentence report shows that petitioner committed and was arrested for the drug offense on April 17, 1993, (PSIR ¶28) and committed and was arrested for the firearms offense on September 7, 1993 (PSIR ¶29). As Amendment 709 would have had no effect on this court's calculation of petitioner's criminal history points, his third asserted claim for relief under §2255 has no merit.[9]

---

[8] The Third Circuit Court of Appeals held on direct review in this case that this court "correctly calculated [petitioner's] Guidelines range and took all relevant sentencing factors into account." Watkins, 297 Fed. Appx. At 174.

[9] This court further notes that even if the two prior sentences in this case were to be counted as a "single" sentence, petitioner's resulting criminal history score would be 14, which still would fall

AO 72
(Rev. 8/82)

As petitioner has failed to identify any nonfrivolous ground, not covered by the waiver, for a collateral attack," Mabry, 536 F.2d at 243, this court cannot find that enforcement of the collateral attack waiver would give rise to a miscarriage of justice in this case.

Accordingly, because petitioner knowingly and voluntarily agreed to waive his right to file a motion to vacate under §2255 or any other collateral proceeding attacking his conviction or sentence, and the enforcement of that waiver will not work a miscarriage of justice, this court concludes that petitioner's waiver of his collateral attack rights is enforceable. Petitioner's §2255 motion therefore will be denied.

Local Appellate Rule 22.2 of the United States Court of Appeals for the Third Circuit directs that when a final order denying a motion under §2255 is entered, a determination of whether a certificate of appealability should issue also shall be made. The issuance of a certificate of appealability is "[t]he primary means of separating meritorious from frivolous appeals." Barefoot v. Estelle, 463 U.S. 880, 893 (1983) (setting forth standards for certificate of probable cause).

Congress has mandated that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2).

---

within criminal history category VI and would result in the same sentencing guidelines range as properly calculated by the court under the version of the guidelines in effect at the time of petitioner's sentencing.

AO 72
(Rev. 8/82)

Where, as here, the court denies relief on procedural grounds, a petitioner is entitled to a certificate of appealability only if he can demonstrate both that jurists of reason would find it debatable whether the petition states a valid claim of a denial of a constitutional right and that jurists of reason would find it debatable whether the court is correct in its procedural ruling. See, e.g., Slack v. McDaniel, 529 U.S. 473, 484 (2000); Bivings v. Wakefield, 316 Fed. Appx. 177, 179 (3d Cir. 2009).

Here, the court is satisfied that no reasonable jurist would argue that petitioner's waiver of his collateral attack rights is not enforceable for the reasons outlined above. Slack, 529 U.S. at 484. Nor is it reasonably debatable that petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, the court believes that a certificate of appealability should not issue in this case. See Santana v. United States, 98 F.3d 752, 757 (3d Cir. 1996).

An appropriate order will follow.

/s/ Gustave Diamond
Gustave Diamond
United States District Judge

Date: January 28, 2013

cc: Margaret E. Picking
Assistant U.S. Attorney

Maurice Watkins